# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA M. CHAPMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Case No. 4:13CV1304 AGF |
| | ) | (NCC) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Joshua M. Chapman (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), and for Supplemental Security Income (SSI) under Title XVI of the Act. See 42 U.S.C. §§ 401, 1381. Plaintiff has filed a brief in support of the Complaint. (Doc. 14). Defendant has filed a brief in support of the Answer. (Doc. 19). The cause was referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to Title 28 U.S.C. § 636(b)(1). (Doc. 15).

## I.
## PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on May 27, 2010, alleging a disability onset date of November 15, 2009. (Tr. 164-74). Plaintiff's applications were denied, and he requested

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she should be substituted for Michael J. Astrue as the defendant. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Act.

a hearing before an Administrative Law Judge (ALJ). (Tr. 99-103, 106-110). On February 21, 2012, a hearing was held before an ALJ, who found Plaintiff not disabled by decision dated April 17, 2012. (Tr. 5-96). On May 14, 2013, the Appeals Council denied Plaintiff's Request for Review. (Tr. 1-4). As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. '' 416.920, 404.1529. A"If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.@ Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in A"substantial gainful activity@ to qualify for disability benefits. 20 C.F.R. '' 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. '' 416.920(c), 404.1520(c). The Social Security Act defines A"severe impairment@ as A"any impairment or combination of impairments which significantly limits [claimant=s] physical or mental ability to do basic work activities.@ Id. A"The sequential evaluation process may be terminated at step two only when the claimant=s impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.@ Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. '' 416.920(d), 404.1520(d);

pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant=s age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. '' 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (ARFC@). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) (AThrough step four of this analysis, the claimant has the burden of showing that she is disabled.@); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant=s RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. ' 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. '' 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant=s RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. AThe ultimate burden of persuasion to prove disability, however, remains with the claimant.@ Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) (AThe burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.@); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) (A[T]he burden of production

shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.@).  Even if a court finds that there is a preponderance of the evidence against the ALJ=s decision, that decision must be affirmed if it is supported by substantial evidence.  See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984).  ASubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner=s conclusion.@  Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).  See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).  In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) (A[W]e may not reverse merely because substantial evidence exists for the opposite decision.@) (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) (A[R]eview of the Commissioner=s final decision is deferential.@).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992).  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ=s conclusion.  See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the

fact-finder.  See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ=s decision is conclusive upon a reviewing court if it is supported by Asubstantial evidence@).  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger,  390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner=s final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant=s treating physicians;

(4) The subjective complaints of pain and description of the claimant=s physical activity and impairment;

(5) The corroboration by third parties of the claimant=s physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant=s physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec=y of Dep=t of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ=s decision must comply Awith the relevant legal requirements.@ Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the Ainability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months.@ 42 U.S.C. ' 416(i)(1)(A); 42 U.S.C. ' 423(d)(1)(A). AWhile the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant=s subjective complaints need not be produced.@ Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant=s daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant=s pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant=s functional restrictions.

Baker v. Sec=y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff=s credibility. See id. The ALJ must also consider the plaintiff=s prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff=s appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff=s complaints. See Guilliams, 393 F.3d at 801;

Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. See Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec=y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, Aneed not explicitly discuss each Polaski factor.@ Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ=s credibility assessment must be based on substantial evidence. See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. ' 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. ' 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff=s capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff=s qualifications and capabilities. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner=s burden, the testimony of a vocational expert (AVE@) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff=s limitations, but only those which he finds credible. See Goff, 421 F.3d at 794 (A[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical.@); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff=s subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

**VI.**
**DISCUSSION**

The issue before the court is whether substantial evidence supports the Commissioner=s final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner=s position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

The ALJ found that Plaintiff met the insured status requirements through June 30, 2011; he had not engaged in substantial gainful activity since November 15, 2009, his alleged onset date; he had the severe impairments of depression, anxiety, mood disorder, and attention deficit disorder (ADD); and he did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ further found Plaintiff had the RFC to perform the full range of unskilled work at all exertional levels, but that he had the following non-exertional limitations: he could sustain concentration for periods of two hours at a time, after which he required a change of task; and he might not be able to perform work at a production pace during the day, but was able to meet expectations by the end of the workday. Based on the Medical-Vocational Guidelines (the Guidelines) and the testimony of a VE, the ALJ found that there was work in the national economy which a person of Plaintiff's age and with his work experience, education, and RFC could perform and, therefore, Plaintiff was not disabled.

Plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ failed to recognize Plaintiff's schizophrenia and post-traumatic stress disorder (PTSD) were severe impairments, and failed to explain why; the ALJ's RFC determination was not supported by any evidence and was inconsistent throughout the decision; the ALJ failed to discuss the weight given to evidence and opinions of record; and the ALJ "played doctor" and came to her own conclusions. For the following reasons, the court finds that Plaintiff's arguments are without merit and that the ALJ's decision is supported by substantial evidence.

**A.      ALJ's Credibility Determination:**

The court will first consider the ALJ≈s credibility determination, as the ALJ≈s evaluation of Plaintiff≈s credibility was essential to the ALJ≈s determination of other issues, including Plaintiff≈s RFC.  See Myers v. Colvin, 721 F.3d 521, 527-28 (8th Cir. 2013) (finding no error where ALJ phrased the credibility determination in terms of the RFC determination where he provided thorough analysis of the credibility issue that relied on more than the absence of objective medical evidence); Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) (A[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.≈) (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. '' 404.1545, 416.945 (2010).  As set forth more fully above, the ALJ≈s credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ.  See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination.") (quoting Juszczyk v. Astrue, 542 F.3d 626, 632 (8th Cir. 2008)); Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750.  To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff≈s credibility, this is not necessarily a basis to set aside an ALJ≈s decision where the decision is supported by substantial evidence.  See Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).

Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately

explained and supported, credibility findings are for the ALJ to make. See Partee v. Astrue, 638 F.3d 860, 865 (8th Cir. 2011) ("The ALJ is not required to discuss methodically each Polaski consideration, so long as he acknowledged and examined those considerations before discounting a claimant's subjective complaints."); Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of her credibility determination are based on substantial evidence.

First, the ALJ considered that Plaintiff's daily activities, "particularly, [that his] 'hanging out' at the mall and other stores" did not support significant restrictions. (Tr. 17). Indeed, Plaintiff testified that he had a girlfriend; they "just [hung] out, watch[ed] movies, and talk[ed]"; and they did these things at her apartment. Plaintiff also testified that he worked on a computer; he liked taking computers apart and putting them back together; he could make a computer from scratch; and, when doing so, he would take "the hard motherboard and everything out of it, and then put [] a new one in"; at the time of the hearing he was "usually read[ing]"; and he could read two books a week. Additionally, Plaintiff testified that he went to Headway, where he

worked in the kitchen, cooking and doing dishes; that he did this at his own pace; he filed "medical stuff" at Headway; the filing did not take more than two hours; he also worked as a greeter at Headway; he could work as a greeter for an hour at a time; he took a special bus to Headway; when he went to Headway, he would stay there from 9:00 to 3:30; when he was at Headway, if he made lunch, he did it for everyone; he went to Headway three days a week; and, on the days he did not go to Headway, he stayed home and relaxed.  Plaintiff further testified that he liked to cook; he made a good alfredo sauce and cooked pasta; he liked baking brownies; when he made brownies, he followed the directions; and he put puzzles together and did crossword puzzles.  (Tr. 35-53).

Plaintiff's mother stated in a Function Report – Adult that Plaintiff took care of pets; Plaintiff did "fine" with his personal care; he prepared sandwiches and frozen dinners; he prepared his breakfast and lunch daily; he did laundry; Plaintiff went out alone; he had a driver's license, although he did not have a car; he shopped for books, CDs, and movies; he went to a friend's house or family functions on a regular basis; and he could walk "a couple of miles."  (Tr. 229-34).

While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints.  See Clevenger v. Soc. Sec. Admin., 567 F.3d 971, 976 (8th Cir. 2009) (recognizing cases send mixed signals about significance of daily activities, but noting claimant reported she engaged in an array of activities; it was not unreasonable under case law for ALJ to rely on this evidence to infer claimant's assertion of disabling pain was not entirely credible); Pirtle v. Astrue, 479 F.3d 931, 935 (8th Cir. 2007) (claimant's ability to homeschool her two

children was inconsistent with allegation of disability); Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001). Indeed, the Eighth Circuit holds that allegations of disabling Apain may be discredited by evidence of daily activities inconsistent with such allegations.@ Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001). AInconsistencies between [a claimant=s] subjective complaints and [his] activities diminish [his] credibility.@ Goff, 421 F.3d at 792. See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant=s daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).

Second, to the extent Plaintiff contends the ALJ did not properly find he had severe schizophrenia or PTSD, Plaintiff did not claim he was disabled due to these conditions in a disability report. (Tr. 226). The Eighth Circuit holds that it is significant that a claimant has failed to allege disability due to a particular condition. See Wall v. Astrue, 561 F.3d 1048, 1062 (8th Cir. 2009) (because the claimant did not allege that she suffered from a severe mental impairment, AALJ=s failure to discuss listing 12.05C [was], therefore unsurprising@); Dunahoo, 241 F.3d at 1039 (fact that claimant did not allege depression on his benefits application was significant even though evidence of depression was later developed).

Third, as considered by the ALJ, several health care providers' diagnoses were based on Plaintiff's reporting of subjective complaints. Cf. Renstrom v. Astrue, 680 F.3d 1057, 1064-65 (8th Cir. 2012) (affirming where ALJ did not give controlling weight to opinion of treating doctor, where doctor's opinion was "largely based on [claimant's] subjective complaints). In

this regard, Omar Quadri, M.D., a psychiatrist, diagnosed Plaintiff with paranoid schizophrenia and depressive disorder, on August 4, 2010, based on Plaintiff's reporting that he had developed schizophrenia symptoms in the past year, that he heard "muffled voices," that he had paranoid delusions, and that he felt, at times, that his "mind was being controlled by something outside himself." (Tr. 404-405). Subsequently, on August 18, 2010, when Dr. Quadri again diagnosed Plaintiff with schizophrenia and depressive disorder, he relied on Plaintiff's reporting that he saw people who were not there, that he had flashbacks of childhood abuse, that he had some suicidal thoughts, and that he had nightmares where he sliced his wrists, and hung and electrocuted himself. (Tr. 406). When Dr. Quadri changed his diagnosis to schizoaffective disorder, in September 2011, Plaintiff reported that he had been having mood swings, and was "pissed off, irritable, depressed," and had been "blowing up" and "snapping at people and getting irritated at things that normally would not bother him." Dr. Quadri also noted, on this date, that Plaintiff said he had days when he had a lot of energy and could not keep still; he had racing thoughts; and he found it hard to stay focused. (Tr. 535). Significantly, a doctor who reported that Plaintiff was responding to "internal stimuli," noted that Plaintiff stated he "ha[d] voices that [were] muffled and mumbling." (Tr. 454).

Fourth, observations of medical providers were inconsistent with Plaintiff's allegations that he was unable to work. See Halverson v. Astrue, 600 F.3d 922, 933 (8th Cir. 2010) (doctor's observations were inconsistent with claimant's allegations of disability); Eichelberger, 290 F.3d at 589 ("[A]n ALJ may disbelieve a claimant=s subjective reports of pain because of inconsistencies or other circumstances.@). For example, when diagnosing Plaintiff with schizophrenia and depressive disorder in August, September, October, November, and December 2010, Dr. Quadri noted that Plaintiff was polite, calm, cooperative, made good eye contact, had

14

no psychomotor abnormalities or involuntary movements, had logical and goal-directed responses, and had good insight, judgment and clear sensorium. (Tr. 406, 408, 409, 410, 411, 412). Even the doctor, who diagnosed Plaintiff with schizophrenia, PTSD, and ADD, in May 2011, reported that Plaintiff's insight, judgment, impulse control, and memory were fair, and that he was cooperative, pleasant, maintained good eye contract, had no abnormal movements, and was oriented. (Tr. 454). See Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir.2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record).

    As noted by the ALJ, when Plaintiff was seen by counselors and Dr. Quadri at the Crider Center from June 2011 through January 2012, he reported ongoing symptoms, but objective examination findings were mostly normal. (Tr. 15, 532-48). Indeed, in June, August, September, October 2011, it was noted that Plaintiff had no psychomotor abnormalities and good insight and judgment. (Tr. 532-36). When Dr. Quadri changed his diagnosis from schizophrenia to schizoaffective disorder, in September 2011, Dr. Quadri reported that Plaintiff was polite, and cooperative, with good eye contact; he had no psychomotor abnormalities or involuntary movements; his responses were logical and goal directed; and he had good insight and judgment and clear sensorium. (Tr. 535). In January 2012, Plaintiff had reduced auditory hallucinations, which did not bother him, and had no suicidal ideations, although he had been having tremors since starting Wellbutrin. (Tr. 548).

    Fifth, the record reflects that Plaintiff's symptoms improved with medication and treatment. Conditions which can be controlled by treatment are not disabling. See Renstrom v.

Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010)); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling). As noted by the ALJ, upon Plaintiff's discharge from the hospital, on May 24, 2010, after his being treated with medications due to his report of visual and auditory hallucinations, depression, and suicidal ideation, Plaintiff's mood and behavior had improved; he was stable; and he had no suicidal ideations. (Tr. 13, 339). Again, upon discharge from the hospital, on June 10, 2010, after being admitted for psychosis not otherwise specified and treated with antidepressant medication, Plaintiff was in stable condition; his mood was "OK"; his insight and judgment were fair; his affect was calm; his thought process was linear and logical; and he had no hallucinations or thoughts of suicide. (Tr. 14, 367).

After initially being diagnosed with schizophrenia and depression, in August 2010, by Dr. Quadri, Plaintiff reported, monthly, from September through December 2010, that he was doing better. (Tr. 406-12). In fact, on February 22, 2011, Plaintiff told Dr. Quadri that his therapy was "going well," and he was doing well, had no complaints, was in a good mood, denied feeling depressed, had no paranoia or auditory hallucinations, had no depression, had normal sleep, appetite, and energy, had no anxiety, and had no nightmares since starting Prazosin. (Tr. 413). On March 22, 2011, Plaintiff told Dr. Quadri that he felt "like a normal person now." (Tr. 414). Also, in March and April 2011, Dr. Quadri reported that Plaintiff had "no complaints" and denied feeling depressed. (Tr. 414-15). Plaintiff was treated with

medications, counseling, anger management, and behavior modification when he was admitted to the hospital, in May 2011, because he was hearing voices. Upon discharge he was stabilized, his mood had improved, and he denied suicidal ideations. (Tr. 451-53). After his discharge, in May 2011, Plaintiff reported that Abilify helped with taking the voices away. (Tr. 418). In July 2011, Plaintiff did not report any concerns and none were observed. (Tr. 505). Plaintiff told Dr. Quadri, in September 2011, that medication helped with his depression, although he still was depressed and anxious. (Tr. 535).

Sixth, Plaintiff was instructed to deal with PTSD symptoms with relaxation; he also practiced deep breathing. (Tr. 420). See Constock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (upon discrediting the claimant=s allegations of back pain, ALJ properly considered that Plaintiff took aspirin, used a whirlpool tub, and had his wife rub ointment on his back to relieve pain); Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987) (holding that disabling pain not indicated when claimant merely took hot showers and used Advil and aspirin to relieve pain).

Seventh, the ALJ considered that Global Assessment of Functioning (GAF) scores reported by providers were inconsistent with Plaintiff's functional abilities as demonstrated by his daily activities. (Tr. 17). Indeed, it was reported that Plaintiff had a GAF of 35 upon hospital admission in June 2010, but it was 52 upon discharge; Plaintiff had a GAF scores of 35 and 45-60 in August 2010; and his GAF was 55 in May 2011. GAF scores reflect a clinician=s judgment of the individual=s overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent Asome impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations,

judgment, thinking, or mood,@ 41 to 50 represents Aserious,@ scores of 51 to 60 represent Amoderate,@ scores of 61 to 70 represent Amild,@ and scores of 90 or higher represent absent or minimal symptoms of impairment.  Id. at 32.  Although Athe Commissioner has declined to endorse the GAF scale for >use in the Social Security and SSI disability programs,= ... GAF scores may still be used to assist the ALJ in assessing the level of a claimant's functioning.@ Halverson v. Astrue, 600 F.3d 922, 930-31 (8th Cir. 2010) (quoting 65 Fed. Reg. 50746, 50764-65, and citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) (AWhile a GAF score may be of considerable help to the ALJ in formulating the [residual functional capacity], it is not essential to the RFC's accuracy.@).

Further, as discussed above in regard to Plaintiff's daily activities, the court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's GAF scores were inconsistent with this ability to function as evidenced by his daily activities.  Moreover, Plaintiff's low GAF scores were frequently inconsistent with doctor's objective findings.  For example, although Thomas J. Spencer, Ph.D, an examining doctor, reported that Plaintiff's GAF was 45-50, he also reported that Plaintiff had "no obvious impairment in grooming or hygiene"; Plaintiff was "a decent historian"; his insight and judgment were "relatively intact"; he was alert and oriented; he was not observed responding to internal stimuli and denied hearing voices as they spoke; and no receptive or expressive language deficit was observed.  (Tr. 378-79).

In conclusion, the court finds that the ALJ's credibility findings are based on substantial evidence.

**B.    Plaintiff's RFC:**

The Regulations define RFC as Awhat [the claimant] can do@ despite his or her Aphysical or mental limitations.@ 20 C.F.R. ' 404.1545(a). AWhen determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant=s mental and physical impairments.@ Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). AThe ALJ must assess a claimant=s RFC based on all relevant, credible evidence in the record, >including the medical records, observations of treating physicians and others, and an individual=s own description of his limitations.=@ Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

The Regulations define RFC as Awhat [the claimant] can do@ despite his or her Aphysical or mental limitations.@ 20 C.F.R. ' 404.1545(a). AWhen determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant=s mental and physical impairments.@ Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). AThe ALJ must assess a claimant=s RFC based on all relevant, credible evidence in the record, >including the medical records, observations of treating physicians and others, and an individual=s own description of his limitations.=@ Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant=s RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant=s impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant=s RFC is primarily the responsibility of the ALJ, a Aclaimant's residual functional capacity is a medical question.=@ Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth

Circuit clarified in Lauer, 245 F.3d at 704, that A[s]ome medical evidence,= Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant=s >ability to function in the workplace,= Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).@ Thus, an ALJ is Arequired to consider at least some supporting evidence from a professional.@ Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) (AThe ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC.@); Eichelberger, 390 F.3d at 591.

Upon making an RFC assessment, an ALJ must first identify a claimant=s functional limitations or restrictions, and then assess his work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). The RFC need only include a plaintiff=s credible limitations. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) (AThe ALJ included all of Tindell=s credible limitations in his RFC assessment, and the ALJ=s conclusions are supported by substantial evidence in the record.@).

As discussed above, the ALJ included non-exertional limitations in Plaintiff's RFC, although she found that Plaintiff could perform the full range of unskilled work. Unskilled work involves simple duties that can be learned on the job in a short period of time. They require little or no judgment, and may or may not require considerable strength. Jobs are considered unskilled "if the primary work duties are handling, feeding and offbearing . . . or machine tending." 20 C.F.R. § 404.1568(a). The court finds that substantial evidence supports the ALJ's determination that Plaintiff can perform the full range of unskilled work, as the record does not reflect physical limitations.

As for non-exertional limitations, the ALJ limited Plaintiff to sustaining concentration for period of two hours at a time, after which he required a change of tasks, and found that he was not able to perform work at a production pace during the day, but was able to meet expectations by the end of the workday.  Arguably, the ALJ's limiting Plaintiff's ability to maintain a production pace is consistent with his requiring low stress jobs due to his mental impairments.  However, the ALJ stated early in her opinion that Plaintiff had no more than mild limitations in his ability to interact socially, although she later stated that Plaintiff was limited to jobs with low social interaction.  (Tr. 11, 17).  The court is hesitant to ascribe these conflicting statements to clerical error, as Defendant suggests, because of the significance of the relevant limitations; indeed, the job of office helper, a job which the ALJ found Plaintiff was capable of performing, likely requires social interaction.  (Doc. 19 at 13).  As such, the court will recommend reversing and remanding this matter for clarification of the non-exertional limitations which the ALJ intended to include in Plaintiff's RFC.  Upon remand, the court suggests that the ALJ specifically determine whether Plaintiff's RFC includes limiting his social interaction.  If his social interaction should be limited, the ALJ should determine the degree of such a limitation.  Further, the ALJ should consider the testimony of a VE regarding the effect of any limitation regarding Plaintiff's social interaction on the availability of work which he can perform.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole does not support the Commissioner's decision denying Plaintiff benefits, and that this matter should be reversed and remanded to the Commissioner of Social Security for further

consideration pursuant to 42 U.S.C. 405(g), sentence 4. Upon remand, the ALJ should be directed to fully develop the record in a manner consistent with this court=s opinion. The court stresses that, upon recommending reversal and remand of this matter, it does not mean to imply that the Commissioner should return a finding of Adisabled.@ The court is merely concerned that the Commissioner=s final determination, as it presently stands, is not supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief sought by Plaintiff in his Complaint and Brief in Support of Complaint be **GRANTED**, in part, and **DENIED,** in part; Docs. 1, 14.

**IT IS FURTHER RECOMMENDED** that a separate order of reversal and remand be entered incorporating this Report and Recommendation.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of May 2014.